## BURTON v. ROSEMARY MFG. CO.

(Filed February 24, 1903.)

1. CONTRACTS—*Pleadings—Burden of Proof.*

When the complaint alleges a contract to superintend certain work for a certain per cent of the cost thereof and the answer denies the allegations of the complaint and sets up a special contract, the burden is on the defendant to prove the contract as alleged by him.

2. PLEADINGS—*Assumpsit—Contracts—Quantum Meruit.*

A plaintiff may declare on a special contract and join therewith a cause of action as on a *quantum meruit.*

3. CONTRACTS—*Definition.*

Where the minds of two contracting parties do not come together, there is no special contract.

4. ISSUES—*Mandatory—The Code, Sec. 395.*

The provisions of The Code requiring issues "arising upon the pleadings" to be submitted to the jury are mandatory.

5. INSTRUCTIONS—*Hypothesis.*

The trial judge should not give instructions based upon hypotheses upon which there is no testimony.

ACTION by W. O. Burton against the Rosemary Manufacturing Company, heard by Judge *George A. Jones* and a jury, at August Term, 1902, of the Superior Court of HALIFAX County. From a judgment for the plaintiff, the defendant appealed.

*W. E. Daniel* and *Claude Kitchin,* for the plaintiff.
*E. L. Travis,* for the defendant.

CONNOR, J. The plaintiff set out in his complaint a cause of action upon a special contract, in that "on or about the last day of October, 1900, the plaintiff and defendant entered into an agreement whereby the plaintiff agreed on his part to

personally superintend and direct the erection of a mill, which the defendant contemplated building on its property near the town of Roanoke Rapids"; that the defendant agreed and promised to pay him therefor a sum to equal six and a half per centum of the cost of the building; that the mill cost the sum of $51,000, and that the amount due him pursuant to the special contract was $3,315; that a portion of said sum has been paid, leaving a balance due thereon of $2,322.18.

For a second cause of action, the plaintiff alleged that he contracted to personally superintend the erection of the mill which the defendant contemplated building, and that the defendant promised to pay him therefor what his services were reasonably worth; that said services were reasonably worth the sum of $3,315; that defendant has paid him on account thereof the sum as aforesaid, etc.    There were several other items in the plaintiff's account, in regard to which there was no controversy involved in this appeal.

The defendant admitted the contract as set out, except "that the defendant was to pay the plaintiff the sum of $1,200 for his services, and that the same had been paid."    The defendant denied that there was an agreement to pay six per cent of the cost of the mill.

The defendant, answering the allegation in regard to the second alleged cause of action, denied that there was an agreement whereby the defendant promised to pay the plaintiff what the service was reasonably worth, and averred that "it was expressly understood and agreed that for said service the defendant was to pay the plaintiff the sum of $1,200, and that the same was paid before the commencement of this action."

The Court, without objection, submitted to the jury the issue, "Is the defendant indebted to the plaintiff, and if so, in what amount?" to which they responded, "$1,086.06½."

The plaintiff testified that the contract was as alleged in the

complaint.   S. F. Patterson, treasurer and manager of the defendant company, testified that there was an express contract to pay the plaintiff for his services $1,200, and that the same had been paid.   Plaintiff and defendant introduced testimony tending to corroborate and sustain their several contentions.

His Honor charged the jury "that the burden was on the plaintiff to satisfy them by the greater weight of the testimony that defendant promised to pay plaintiff six per centum of the cost of the building, and that if plaintiff had failed to satisfy them, he could not recover under the special contract declared on in his complaint."

He also charged the jury "that, having alleged that the special contract was to pay the plaintiff $1,200, the burden was upon the defendant to satisfy them by the greater weight of the testimony that this was the contract."   To this instruction the defendant excepted.   To the first part of the instruction there can be no objection.   It is to so much of the charge as places the burden of proof upon the defendant, in regard to its allegation of a special contract to perform the service for $1,200, that the defendant excepts.   It is possible that some confusion arose by the form of the issue submitted. It is the purpose of the rules and principles upon which the Code of Civil Procedure is based, to present to the jury issues of fact, as far as possible, free from complications with questions or issues of law, arising upon the pleadings.   The general issue should not be submitted.   If the plaintiff had alleged "that the defendant was indebted to him in the sum of $3,315," and demanded judgment therefor, such complaint would have been demurrable.   *Moore v. Hobbs,* 77 N. C., 65, also 79 N. C., 535.

The complaint in this case sets forth the facts constituting the plaintiff's cause of action in accordance with the provisions of The Code as construed by this Court.   The answer

denied the allegations, and set up a special contract different in respect to the amount to be paid for the service than that alleged in the complaint, coupled with an averment of payment in accordance therewith. The defendant could well and safely have contented itself with a denial and the affirmative plea of payment, using its testimony in regard to the alleged price to be paid to sustain its denial and defence. The plaintiff could not have recovered upon the defendant's averment of a special contract different from that set up as his cause of action; hence, the allegation made by the defendant, as we construe it, amounted to a plea of payment, and from this point of view the burden to sustain it was upon the defendant. The exception can not be sustained.

It was the right of the plaintiff to declare upon a special contract, and to join therewith a cause of action as upon a *quantum meruit.* He could recover upon the common counts in general *assumpsit* provided he had set forth facts sufficient to constitute a cause of action, although he had not specifically declared upon a "second cause of action." This Court has uniformly so held since the decision in *Jones v. Mial,* 82 N. C., 252. If the plaintiff succeeded in establishing a special contract, he could not abandon such contract and recover upon the common counts. This principle is illustrated and enforced in the case of *Lawrence v. Hester,* 93 N. C., 79. His Honor, in the case at bar, instructed the jury, "If, from the greater weight of the testimony, the jury should find that the plaintiff honestly believed the contract was on a six and a half per cent basis, and that the defendant honestly believed that the contract was for $1,200, then their minds had not come together so as to make a contract, and if the jury should find from the greater weight of the testimony that no contract was made, then they should find what it was reasonably worth to build such a mill as the one about which the suit was brought, deducting therefrom what was already paid,

if they should find that he had not been paid a sufficient amount." To this instruction the defendant excepted. The instruction, properly construed, amounted to saying to the jury that if the minds of the parties did not come to an agreement, there was no special contract, and is sustained both by the elementary principles of the law of contract and the decisions of this Court. *Brunhild v. Freeman,* 77 N. C., 128; *Thomas v. Shooting Club,* 121 N. C., 238. The exception can not be sustained.

While we find no error in the record for which we can order a new trial, it is apparent that the verdict rendered by the jury was a compromise, and does not commend itself to the judicial mind or promote that degree of practical certainty in the results of judicial proceedings which it is the aim and purpose of the law of procedure to reach.

We think that it is always best to observe and enforce the rules of pleading and practice required by The Code. This Court has frequently said that the provisions of The Code in regard to submitting issues "arising upon the pleadings" are mandatory. See cases collected in Clark's Code (3d Ed.), sec. 396. There is no exception to the issue as submitted, and we can not interfere.

The defendant, among other instructions which were given and in respect to which there is no exception, requested the Court to instruct the jury "that if the plaintiff, W. O. Burton, agreed, from what Patterson said about the building, to build the house for $1,200, thinking it would be about the size of the silk mill, and discovered his mistake when he was furnished with the plans given, and went on and superintended the building, it is too late to object to the plans, and he is bound by his contract." The instruction was refused, and the defendant excepted. The legal proposition involved in the instruction is correct. If the jury could have found that Patterson described the size, etc., of the building, and the

plaintiff, assuming such description to be true and correct, and thereupon agreed to superintend its erection for $1,200, and thereafter ascertained from the plans, before beginning the work, that the projected building was of a different size, etc., he would not be under any liability to perform the service; to have required him to do so would have been to bind him to the performance of services which he never contracted. If, however, before entering upon the service, he had learned from the plans or otherwise that there was a mistake or misunderstanding in regard to the size of the mill, he should have notified the defendant and declined to proceed with the work. There is, however, no testimony upon which to base this theory or contention. Neither party to the transaction makes the slightest suggestion that there was any such misunderstanding or mistake in respect to the size of the building. The Court should not give instructions to the jury based upon hypotheses upon which there is no testimony. This would be to authorize the jury to speculate in regard to bare possible conditions and guess at their verdict. This is too well settled to require the citation of authorities. The exception can not be sustained, and the judgment of the Court below must be

Affirmed.